UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
AMANDA SEDACA ROSENBERG,

                Plaintiff,                            NOT FOR PUBLICATION
                                                    ORDER
-against-                                    09-CV-4016 (CBA)(LB)

THE CITY OF NEW YORK, NEW YORK CITY
DEPARTMENT OF EDUCATION, JORGE MITEY,
GERALDINE MAIONE, and ENZA FERENTELLI,

                Defendants.
-----------------------------------------------------------------x
AMON, Chief United States District Judge:

        Plaintiff Amanda Rosenberg ("plaintiff" or "Rosenberg") filed an amended complaint on

July 2, 2010, alleging that defendants discriminated against her on the basis of her sex and

retaliated against her when she complained about sexual harassment.  By so doing, plaintiff

alleges that defendants City of New York, New York City Department of Education, Garaldine

Mainoe ("Maione") and Enza Ferentelli ("Ferentelli," and collectively the "City Defendants"),

and Jorge Mitey ("Mitey") violated her rights under Title IX, 42 U.S.C. §§ 1983 and 1985, the

First and Fourteenth Amendments, and New York State and City law.  The City Defendants and

Mitey now separately move to dismiss the amended complaint in full.

## BACKGROUND

        The following facts are alleged in the amended complaint.  Rosenberg was a special

education teacher at Franklin Delano Roosevelt High School in Brooklyn, New York ("FDR"),

working for the New York City Department of Education.  Mitey was a high school teacher, also

working for the Department of Education, and during his career, was employed at FDR under the

supervision of Maione, the Principal of FDR, and Ferentelli, an Assistant Principal at the school.

Plaintiff began her work at FDR in September 2006, following her admission to the New York City Teaching Fellows Program. The Teaching Fellows Program attracts highly qualified individuals with previous work experience to teach in high need New York City Schools by subsidizing the cost of a Master's degree in education. Participants are required to obtain teaching positions in New York City schools while they pursue their Master's degree. Fellows find their own teaching positions and are paid the same salary and benefits as other New York City teachers. They cannot continue participation in the Program unless they maintain their teaching position.

Plaintiff alleges that after commencing her employment at FDR, she was subjected to sexual remarks, innuendo and harassment by Mitey. Mitey would, for example, compliment her clothing and appearance in front of her students. Once, when plaintiff returned to work after an absence, plaintiff alleges, Mitey approached her and said that he had missed her and that if he had known she was out sick, he would have come to her house and served her breakfast in bed. He stated that he wished he was plaintiff's boyfriend, and that her boyfriend was a lucky man. On or about April 2007, plaintiff alleges, Mitey offered her a ride home. At that time, plaintiff was dating another teacher in the school. During the drive, plaintiff alleges that Mitey made numerous inappropriate sexual remarks and inquired into her sex life with the other teacher. She alleges that Mitey gave her advice about how to commit an affair by putting Mitey's number in her cell phone, but substituting a female name in the contact list. In September 2007, when Mitey learned she had moved, plaintiff alleges that Mitey asked if he could help her unpack, and, when she declined, remarked, "Well, if I get drunk, can I come over and sleep in your bed with you?" She further alleges that in October 2007, Mitey asked her to stop by his office, and when she did not, approached her to ask why she had refused.

Plaintiff states that in December 2007, she told her boyfriend, a fellow teacher, about the incidents described above. She states that her boyfriend approached Mitey, who in turn angrily confronted plaintiff for making the allegations. Plaintiff then advised her union representative, the United Federation of Teacher's ("UTF's") Chapter Leader, about Mitey's conduct. She says that she was informed that other female school employees had made similar allegations of sexual harassment against Mitey, concerning both staff and students, but that they had been afraid to file formal complaints. The two agreed that plaintiff would file a complaint and that the Chapter Leader would enlist the other women to buttress her claims. The Chapter leader urged plaintiff to wait until after the upcoming union elections, however, because Mitey was actively campaigning for the positing of UTF Chapter Leader. Mitey won the election.

On January 29, 2008, plaintiff attended a meeting with Maione, the former UTF Chapter Leader, and two school employees, to address Mitey's alleged sexual harassment of students and staff. Plaintiff alleges that Maione became defensive and stated that whatever harassment had occurred was plaintiff's fault and that filing a formal complaint would be a waste of time. Plaintiff nevertheless advised Maione that she intended to file a complaint. On February 5, 2008, plaintiff contacted the New York City Department of Education's Office of Equal Opportunity to file a formal complaint and met with investigators on February 11, 2008.

Also on February 11, 2008, plaintiff alleges that Maione and Ferentelli walked into plaintiff's classroom in the middle of class and observed her teaching. She states that ordinarily, such observation sessions are preceded by a pre-observation conference, but that in this instance, none occurred. She alleges that Maione and Ferentelli whispered to each other throughout most of the class. Plaintiff was directed to attend a post-observation conference with Maione and Ferentelli on February 25, 2008. At the conference, Ferentelli complained that there was

insufficient class participation during her lesson and that the incident would be written up as a formal observation. Plaintiff alleges that Ferentelli had previously advised her that the observation was only a walk-through, informal observation.

On March 17, 2008, plaintiff was advised that she should not attend a school-wide dinner for the entire faculty to which she had previously been invited. She states that she was advised not to attend because Mitey would also be in attendance. Only April 2, 2009, plaintiff was given the formal report of the February 11, 2008 observation, which rated her unsatisfactory. The report of her first observation session in the fall of 2007, conducted by Ferentelli, rated her as satisfactory. On April 7, 2008, Ferentelli conducted an observation of plaintiff's classroom performance, but failed to document it.

On May 27, 2008, the New York City Department of Education's Office of Equal Opportunity completed a written decision which substantiated plaintiff's complaint of sexual harassment against Mitey. Plaintiff was not advised of the decision until June 2, 2008. That same day, approximately two weeks before the end of the school year, Maione terminated plaintiff from her teaching position. Plaintiff alleges that she was the only teacher, among those terminated, to be dismissed prior to the end of the school year. At the time of her termination, plaintiff was close to obtaining her Master's degree, but was advised that because she was no longer teaching, she could not register to take her final examination. She was further advised that she could no longer continue in the Teaching Fellows Program and was precluded from ever teaching again in a New York City public school.

On September 17, 2009, plaintiff filed a complaint in this action against the City of New York, the Department of Education, Mitey, Ferentelli, and Maione. The Court granted plaintiff leave to amend her complaint on June 24, 2010, and on July 2, 2010, plaintiff filed an amended

complaint.  Defendant Mitey and the City Defendants separately filed motions to dismiss the

amended complaint.

**MOTION TO DISMISS STANDARD**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1974 (2007)).  A complaint that contains only "labels and conclusions" or "a formulaic

recitation of the elements of a cause of action will not do."  Twombly, 127 S. Ct. at 1965.

Neither will a complaint that contains only "naked assertion[s]" without "further factual

enhancement."  Id. at 1966.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint.

129 S. Ct. at 1950.  First, courts can "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth."  Id.  Second, they can then

identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an

entitlement to relief."  Id.  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Id. at 1949.  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

Id.  A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the

complaint, in documents appended to the complaint or incorporated in the complaint by

reference, and to matters of which judicial notice may be taken."  Allen v. WestPoint-Pepperell,

Inc., 945 F.2d 40, 44 (2d Cir. 1991).

**DISCUSSION**

Defendants Mitey and the City Defendants separately filed motions to dismiss the amended complaint. For the reasons stated below, the following claims are dismissed: (1) all claims against the City of New York; (2) all federal claims against Mitey; (3) any § 1983 claim against Maione and Ferentelli arising out of the Equal Protection clause; (4) any § 1985 conspiracy claim against Mitey, Maione, and Ferentelli; and (5) any State and City law claims against the Department of Education.

*I.       City of New York Not a Proper Party*

The amended complaint names as a defendant the City of New York. The City argues that the Department of Education, rather than the City, was plaintiff's employer and that the City is therefore not a proper party to this action. "[T]he City is a separate and distinct legal entity from [the Department of Education]." Temple v. City of New York, 2010 WL 3824116, at *5 (E.D.N.Y. Sept. 21, 2010). Thus, "[i]t is well-settled that 'the City cannot be liable for the acts of [the Department of Education] or its employees.'" Id. (quoting Moore v. City of New York, 2010 WL 742981, at *5 (S.D.N.Y. Mar.2, 2010)); see also Falchenberg v. New York City Dep't of Educ., 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005); Fierro v. City of New York, 591 F.Supp.2d 431, 446 (S.D.N.Y.2008) (rev'd in part on other grounds, 341 Fed. App'x 696 (2d Cir. July 27, 2009).) Plaintiff does not oppose the City's argument that it is not a proper party. Accordingly, all claims against the City of New York are dismissed.

*II.      Title IX Claim Against the Department of Education*

Plaintiff alleges that the Department of Education violated her rights under Title IX.[1]

---

[1] The complaint alleges claims under Title IX only against the City of New York and the Department of Education. As previously noted, any claims against the City of New York are dismissed. To the extent any claim under Title IX

The Department of Education moves to dismiss this claim, arguing that, due to the availability of a private right of action under Title VII, there is no implied right of action under Title IX for an employee complaining that they suffered personal employment discrimination.

There is a split in authority as to whether, given the availability of a private right of action under Title VII, an employee of an educational institution may bring a private employment discrimination claim for money damages under Title IX. The Second Circuit has not decided that question. See Towers v. State Univ. of N.Y. at Stony Brook, 2007 WL 1470152, at *3 (E.D.N.Y. May 21, 2007) (citing Torres v. Pisano, 116 F.3d 625, 630 n.3 (2d Cir. 1997)). Those courts that have found such a right of action is available include, Morris v. Fordham University, 2004 WL 906248, *3 (S.D.N.Y. Apr. 28, 2004), and Henschke v. New York Hosp.-Cornell Med. Ctr., 821 F. Supp. 166, 172 (S.D.N.Y. Apr. 13, 1993). Courts holding otherwise include, Waid v. Merrill Area Public Schools, 91 F.3d 857, 861-62 (7th Cir. 1996), abrogated on other grounds by Fitzgerald v. Barnstable School Committee, 555 U.S. 246 (2009), Lakoski v. James, 66 F.3d 751, 753-54 (5th Cir. 1995), Towers, 2007 WL 1470152, at *4; Urie v. Yale University, 331 F. Supp. 2d. 94, 97-98 (D. Conn. 2004), and Vega v. State Univ. of N.Y. Bd. of Trustees, 2000 WL 381430, at *3 (S.D.N.Y. Apr. 13, 2000). Courts finding that Title IX does not provide a private right of action for an individual complaining of employment discrimination have held that allowing employees to bring such an action would upset the

---

is asserted against him, Mitey moves to dismiss that claim, arguing that there can be no such cause of action because plaintiff can pursue a liability action under Title IX only against a grant recipient. "Although the Second Circuit does not seem to have definitively addressed this issue, the overwhelming majority of federal courts that have, both in this Circuit and elsewhere, have held that 'only the institutional recipient of federal funds can be held liable under Title IX'; 'individuals, who are not recipients, cannot be held liable.'" Tesoriero v. Syosset Central School Dist., 382 F. Supp. 2d 387, 396 (E.D.N.Y. 2005) (quoting Folkes v. N.Y. Coll. of Osteopathic Med., 214 F. Supp. 2d 273, 282 (E.D.N.Y. 2002)). Plaintiff does not argue to the contrary, and any claim brought against Mitey under Title IX is accordingly dismissed. For the same reason, to the extent any Title IX claim is alleged against Maione and Ferentelli, it is dismissed.

carefully balanced remedial scheme of Title VII.  E.g., Vega, 2000 WL 381430, at *3 (citing

cases).

In Cannon v. University of Chicago, 441 U.S. 677 (1979), the Supreme Court recognized

an implied private right of action for gender-based discrimination under Title IX.  The Court has

also found that the remedy of damages is available to an individual enforcing Title IX, Franklin

v. Gwinnett County Pub. Sch., 503 U.S. 60 (1992), and that the scope of Title IX's prohibition

includes gender-based employment discrimination by educational programs receiving federal

financial support.  North Haven Bd. of Educ. v. Bell, 456 U.S. 512 (1982).  Moreover,

"[r]etaliation against a person because that person has complained of sex discrimination is [a]

form of intentional sex discrimination encompassed by Title IX's private cause of action."

Jackson v. Birmingham Bd. of Educ, 544 U.S. 167, 173 (2005).

The Court, however, has never specifically addressed the relationship between Title IX

and Title VII.  In Jackson, for example, the Court considered a suit by the coach of a university's

women's basketball team who was retaliated after complaining of discrimination, not on behalf

of himself, but on behalf of his students.  544 U.S. at 171-72.  Likewise, neither Cannon,

Franklin, nor Bell involved the question of whether an employee could pursue a private cause of

action for damages to vindicate employment discrimination.  As the court in Lakoski explained:

> Both Cannon and Franklin involved claims of prospective or current students at
> federally funded educational institutions; neither involved a claim of employment
> discrimination by an employee of those schools.  Bell addressed Title IX's
> prohibition of employment discrimination in a challenge to the validity of
> administrative regulations terminating federal funding of educational institutions
> that discriminated on the basis of sex in their employment practices.  Bell was not
> a claim by an individual for money damages for discrimination.

Lakoski, 66 F.3d at 754.

On the unique facts of this complaint, however, the Court need not decide at this time

whether a plaintiff complaining only of personal employment based discrimination can maintain a private cause of action under Title IX in light of the availability of Title VII.  First, although plaintiff alleges that she filed a complaint about her personal treatment, she also alleges that Mitey's alleged sexual harassment directed toward students was addressed at her meeting with Maione.  (Am. Compl. ¶¶ 22-23.)  Plaintiff alleges that she was retaliated against after that meeting.

In dicta in <u>Jackson</u>, the Court considered a similar factual scenario.  "If a principal sexually harasses a student, and a teacher complains to the school board but the school board is indifferent," the Court explained, "the board would likely be liable for a Title IX violation." <u>Jackson</u>, 544 U.S. at 180-81 (citations omitted).  To encourage teachers to speak out, therefore, the Court reasoned that it was imperative to grant the teacher a private right of action in the event the teacher was retaliated against.  As the Court explained:

> [I]f Title IX's private right of action does not encompass retaliation claims, the teacher would have no recourse if he were subsequently fired for speaking out. Without protection from retaliation, individuals who witness discrimination would likely not report it, indifference claims would be short circuited, and the underlying discrimination would go unremedied.

<u>Jackson</u>, 544 U.S. at 180-81 (citations omitted).  Here, plaintiff alleges that she, along with the former Union Chapter Leader and two other school employees, attended a meeting with Maione in which they "related Mr. Mitey's conduct of sexual harassment toward students and staff . . . ." (Am. Compl. ¶ 22-23.)  Plaintiff alleges that shortly thereafter, she was retaliated against when she was subjected to improper scrutiny (Am. Compl. ¶¶ 25-27, 29), excluded from a school function (Am. Compl. ¶ 28), and ultimately fired (Am. Compl. ¶ 32).  Just as in <u>Jackson</u> the coach of a women's basketball team was permitted to bring a suit for damages under Title IX after he was allegedly retaliated against for complaining about unequal treatment on behalf of his

students, <u>Jackson</u>, 544 U.S. at 179-81, plaintiff here could properly pursue a cause of action alleging that she was retaliated against for complaining about the harassment of students by an employee of the Department of Education.

Second, in this case, plaintiff alleges not only that she was discriminated against as an employee, but that she was discriminated against as a student participating in the New York City Teaching Fellows Program. (Am. Compl. 11.) The City Defendants correctly point out that plaintiff was pursuing her Master's degree not at the Department of Education, but at an unidentified university. Plaintiff's primary relationship with the Department of Education was as an employee. However, the fact that an individual has an employment relationship with an institution does not mean that the individual cannot also be considered a student under Title IX. <u>See</u> <u>Yog v. Texas Southern University</u>, 2010 WL 4053766, at *4 (S.D. Tex. Aug. 30, 2010) (finding that alleged harassment occurring while student was working as a research assistant for a professor was covered by Title IX because the work performed was an aspect of her educational experience at the university).

Moreover, the amended complaint does allege that the Department of Education had a substantial relationship to plaintiff's education and training. The amended complaint alleges that the Teaching Fellows Program, which subsidized her education, was designed to encourage "highly qualified individuals with previous work experience to teach in high need New York City Schools . . . ." (Am. Compl. ¶ 11.) It alleges that participants were required to obtain positions in New York City Public Schools while pursuing their Master's degrees (Am. Compl. ¶ 11), and that when plaintiff was terminated from her teaching position, allegedly in retaliation for her complaints of discrimination, she was prevented from taking her final examinations and precluded from continuing in the Teaching Fellows Program. (Am. Compl. 12, 35.) Without

further development of the factual record, the Court cannot determine the extent of the Department of Education's role in plaintiff's education and training.  As this is a motion to dismiss, however, the Court finds that plaintiff has pled sufficient facts to give rise to a plausible claim for relief under Title IX against the Department of Education.

III.     *Section 1983 Claims Against Mitey, Maione, and Ferentelly*

Plaintiff brings claims against defendants Mitey, Maione, and Ferentelli pursuant to § 1983,[2] alleging that they violated her rights secured by the First Amendment and the Equal Protection Clause.  In order to maintain an action pursuant to § 1983, a plaintiff must allege two essential elements.  First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)).  Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993) (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)).

a.  *Section 1983 Claims Against Mitey*

Defendant Mitey moves to dismiss any claims asserted against him in the amended complaint under § 1983, arguing that as a fellow teacher, he is not a state actor.  "Sex-based discrimination, including sexual harassment, may be actionable under § 1983 as a violation of

---

[2] The Amended Complaint does not assert a cause of action pursuant to § 1983 against the City of New York or the Department of Education.

equal protection." <u>Kern v. City of Rochester</u>, 93 F.3d 38 (2d Cir. 1996).[3]  Mitey argues,

however, that he cannot be liable under § 1983 because he did not act under color of state law.

As stated, in order to maintain an action pursuant to § 1983, plaintiff must show that "the

conduct complained of [was] committed by a person acting under color of state law." <u>Pitchell</u>,

13 F.3d at 547.

In a § 1983 suit, "a defendant necessarily 'acts under color of state law when he abuses

the position given to him by the State.'" <u>Hayut</u>, 352 F.3d at 744 (quoting <u>West</u>, 487 U.S. at 50).

Thus, "a public employee acts under color of state law while acting in his official capacity or

while exercising his responsibilities pursuant to state law." <u>West</u>, 487 U.S. at 50.  However,

"[m]ere employment by a state or municipality does not automatically mean that a defendant's

actions are taken under the color of state law." <u>Kern v. City of Rochester</u>, 93 F.3d 38, 43 (2d

Cir. 1996) (citing <u>Polk County v. Dodson</u>, 454 U.S. 312, 319-320 (1981)).  "[A]cts of officers in

the ambit of their personal pursuits are plainly excluded" from § 1983 liability.  <u>Pitchell</u>, 13 F.3d

at 548.  Thus, "where the harassment in question does not involve use of state authority or

position, the harasser is generally found not to be acting under color of state law." <u>Williams v.

City of New York</u>, 2006 WL 2668211, at *27 (E.D.N.Y. September 11, 2006).  "In a case

charging hostile environment . . . harassment, 'under color of state law' ordinarily requires that

the harasser be a supervisor or have some position of authority or control over the plaintiff."

<u>Quinn v. Nassau County Police Dept.</u>, 53 F. Supp. 2d 347, 355 (E.D.N.Y. 1999).

Here, plaintiff alleges that Mitey was a fellow teacher.  (Am. Compl. ¶ 6.)  There is no

allegation that Mitey had any supervisory authority over her or that he utilized his authority or

_____
[3] To the extent plaintiff intends to plead a claim of First Amendment retaliation against Mitey, there are simply no
allegations suggesting that Mitey committed a retaliatory act.

position as a fellow teacher in sexually harassing her. To the extent Mitey was clouded with authority by virtue of his position in the union, the Second Circuit has found that such authority, which is exercised for the benefit of the union and not the Department of Education, does not transform an individual's otherwise private actions into actions made pursuant to state law. See Kern, 93 F.3d at 43. Mitey's acts, therefore, were not clouded with his authority as an employee of the Department of Education, and therefore, no claim against him under § 1983 will lie.

> b. *Section 1983 Claims Against Maione and Ferentelli*

Plaintiff also asserts claims under § 1983 against defendants Maione and Ferentelli, alleging that they violated her rights under the First and Fourteenth Amendments. Defendants move to dismiss, arguing that plaintiff can show no violation of her substantive rights.

> i. *First Amendment Retaliation*

Plaintiff alleges that defendants Maione and Ferentelli retaliated against her after she complained about Mitey's conduct, in violation of her First Amendment rights. Maione and Ferentelli move to dismiss. "It is established law in this Circuit that, '[r]egardless of the factual context, we have required a plaintiff alleging retaliation to establish speech protected by the First Amendment.'" Sousa v. Roque, 578 F.3d 164, 169-70 (2d Cir. 2009) (quoting Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir. 2008)). "To determine whether or not a plaintiff's speech is protected, a court must begin by asking 'whether the employee spoke as a citizen on a matter of public concern.'" Sousa, 578 F.3d at 170 (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). "If the court determines that the plaintiff either did not speak as a citizen or did not speak on a matter of public concern, 'the employee has no First Amendment cause of action based on his or her employer's reaction to the speech.'" Sousa, 578 F.3d at 170 (quoting Garcetti, 547 U.S. at 418).

"The Supreme Court has defined 'a matter of public concern' as one that 'relat[es] to any matter of political, social, or other concern to the community.'" Sousa, 578 F.3d at 170 (quoting Connick v. Myers, 461 U.S. 138, 146 (1983)). "The inquiry into the protected status of speech is one of law, not fact." Connick, 461 U.S. at 148 n. 7. "An employee who complains solely about his own dissatisfaction with the conditions of his own employment is speaking upon matters only of personal interest." Sousa, 578 F.3d at 174 (citation and quotation marks omitted). However, "it does not follow that a person motivated by a personal grievance cannot be speaking on a matter of public concern." Id. In Sousa, the Second Circuit emphasized that "a speaker's motive is not dispositive in determining whether his or her speech addresses a matter of public concern." Sousa, 578 F.3d at 173. Instead, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." Connick, 461 U.S. at 147-48.

To the extent plaintiff complained about her personal treatment by Mitey, that complaint concerned a matter of private, rather than public concern. See Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 143 (2d Cir. 1993) (finding individual complaint of sexual harassment not matter of public concern even where evidence subsequently uncovered that employee in question had previously harassed another employee); Carrero v. New York City Housing Authority, 975 F. Supp. 501, 510-11 (S.D.N.Y. 1997) (finding prior lawsuit alleging sexual harassment not speech on matter of public concern); see also Olsen v. County of Nassau, 2008 WL 4838705, at *4-*5 (E.D.N.Y. November 04, 2008) (finding complaints by multiple plaintiffs about harassing treatment not matter of public concern where complaints pertained to individual incidents affecting the plaintiffs).

Plaintiff argues, however, that she raised concerns about the treatment not only of herself,

but also of other teachers and even students.  A complaint about system-wide discrimination may constitute a matter of public concern.  See, e.g., Wise v. New York City Police Dep't, 928 F. Supp. 355 (S.D.N.Y. 1996) (finding that sexual harassment complaints constituted matters of public concern where complaints pertained to plaintiff and other women in the police department).

Defendants further argue that plaintiff's claim is not cognizable because it was made pursuant to her official duties.  "If a public employee speaks not as a citizen but instead pursuant to his or her 'official duties,' an employer's response to that speech does not violate the First Amendment."  Huth v. Haslun, 598 F.3d 70 (2d Cir. 2010) (citing Garcetti, 547 U.S. at 421, 424).  In Pearson v. Board of Education, 499 F. Supp. 2d 575 (S.D.N.Y. 2007), the court found that a complaint by teachers alleging acts of sexual harassment by an employee of the Department of Education against female staff and students was barred because such complaints were made pursuant to their duties of employment.  Id. at 589.

In Pearson, however, the plaintiffs pled that they "individually and collectively, in their capacity, as teachers and pursuant to mandate, complained of Dr. Ayed's predatori[a]l misconduct and unprofessionalism."  Id.  The court found that the teachers had "affirmatively pled that the statement they made with respect to Ayed's allegedly inappropriate sexual conduct were made 'pursuant to their official duties.'"  Id. (quoting Garcetti, 547 U.S. at 421).  Here, in contrast, there is no such affirmative pleading.  Plaintiff in fact pleads that rather than encouraging the teachers to report the alleged incidents, Maione, the Principal of FDR, advised the attendees of a meeting in which they complained about Mitey's treatment of students and staff "that filing a formal complaint was a waste of time and that none of the meeting attendees 'had a case.'"  (Am. Compl. ¶ 23.)  The Court finds that at this stage, plaintiff has pled sufficient

facts to raise a plausible claim of First Amendment retaliation, and that absent factual development of what was said at the meeting, by whom, to whom, and what plaintiff's professional responsibilities were, it cannot hold as a matter of law that the alleged statements were not a matter of public concern or were made pursuant to plaintiff's duties of employment.

### ii. *Equal Protection*

The amended complaint alleges that defendants Maione and Ferentelli deprived plaintiff of her rights under the Equal Protection Clause of Fourteenth Amendment. The Equal Protection Clause of the Fourteenth Amendment guarantees "'[the] right to be free from invidious discrimination in statutory classifications and other governmental activity.'" Bernheim, 79 F.3d at 323 (quoting Harris v. McRae, 448 U.S. 297, 322 (1980)). "The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen Assocs. v. Inc. Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001). Thus, "[a]n equal protection claim has two essential elements: (1) the plaintiff was treated differently than others similarly situated, and (2) this differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Lovell v. Comsewogue Sch. Dist., 214 F. Supp. 2d 319, 321-22 (E.D.N.Y. 2002) (citing Diesel v. Town of Lewisboro, 232 F.3d 92, 103 (2d Cir. 2000)); see also Humphrey v. County of Nassau, 2009 WL 875534, at *17 (E.D.N.Y. Mar. 30, 2009) ("To state a claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a government actor intentionally discriminated against [him] on the basis of [his] membership in a protected class.").

"Whether two employees are similarly situated ordinarily presents a question of fact for the jury." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000). "To be 'similarly

16

situated,' the individuals with whom [plaintiff] attempts to compare [himself] must be similarly situated in all material respects." Shumway v. United Parcel Serv., 118 F.3d 60, 64 (2d Cir. 1997) (citing Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992)). In order to satisfy the "all material respects" standard, a plaintiff must show that "co-employees were subject to the same performance evaluation and discipline standards." Graham, 230 F.3d at 40 (citing Norville v. Staten Island Univ. Hosp., 196 F.3d 89, 96 (2d Cir. 1999)). In addition, a plaintiff must demonstrate that the similarly situated employees engaged in comparable conduct. Id.

It is "well settled" that the "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farid v. Ellen, 593 F.3d 233, 249 (2d Cir. 2010) (citation omitted). As a consequence, "the doctrine of respondeat superior . . . does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity." Hayut v. State Univ. of N.Y., 352 F.3d 733, 753 (2d Cir. 2003).

Here, aside from Maione and Ferentelli's allegedly retaliatory acts, plaintiff has not pled any affirmative acts of discrimination by defendants Maione and Ferentelli. To the extent plaintiff relies on defendants' alleged acts of retaliation following her complaints about Mitey's sexual harassment, such a claim is not cognizable under the Equal Protection Clause. Bernheim v. Litt, 79 F.3d 318, 323 (2d Cir. 1996) ("[A]lthough claims of retaliation are commonly brought under the First Amendment, and may also be brought under Title VII . . . we know of no court that has recognized a claim under the Equal Protection Clause for retaliation following complaints of racial discrimination."); Worthington v. County of Suffolk, 2007 WL 2115038, at *2 (E.D.N.Y. July 20, 2007) ("Retaliating for complaining of gender discrimination is not an Equal Protection Clause violation."); Lange v. Town of Monroe, 213 F. Supp. 2d 411, 419

(S.D.N.Y. 2002) ("[D]efendants' alleged retaliation in response to plaintiff's sexual harassment complaints is not cognizable as an equal protection violation."). Thus, in order to make out her equal protection claim, plaintiff must rely on defendants' acts, or failures to act, as Mitey's supervisors.

In Colon v. Coughlin, 58 F.3d 865 (2d Cir.1995), the Second Circuit identified five ways in which a supervisory official may be personally involved in a violation of constitutional rights. Id. at 873. Liability may attach to a supervisor who:

> (1) [d]irectly participated in the violation, (2) failed to remedy the violation after being informed of it by report or appeal, (3) created a policy or custom under which the violation occurred, (4) was grossly negligent in supervising subordinates who committed the violation, (5) was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated.

Iqbal v. Hasty, 490 F.3d 143, 152-53 (2d Cir. 2007) (citing Colon, 58 F.3d at 873), rev'd on other grounds, Iqbal, 129 S.Ct. 1937. In Iqbal, however, the Supreme Court held that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S.Ct. at 1948. The Court rejected the argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution," because that "conception of supervisory liability is inconsistent with [the principle that supervisors] may not be held accountable for the misdeeds of their agents." Id. at 1949. "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." Id.

Defendants argue that after Iqbal, supervisory liability under § 1983 can, thus, only be established "if that supervisor participate[d] directly in the alleged constitutional violation or if

18

that supervisor create[d] a policy or custom under which unconstitutional practices occurred." See Bellamy v. Mount Vernon Hosp., 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009); see also Spear v. Hugles, 2009 WL 2176725, *2 (S.D.N.Y. July 20, 2009); but see Qasem v. Toro, 737 F. Supp. 2d 147, 151-52 (S.D.N.Y. 2010) ("As Iqbal noted, the degree of personal involvement required to overcome a 12(b)(6) motion varies depending on the constitutional provision alleged to have been violated."); D'Olimpio v. Crisafi, 718 F.Supp.2d 340, 346–47 (S.D.N.Y. 2010) ("Colon's bases for liability are not founded on a theory of respondeat superior, but rather on a recognition that 'personal involvement of defendants in alleged constitutional deprivations' can be shown by nonfeasance as well as misfeasance.").

Plaintiff does not dispute the standard proposed by defendants. Instead, plaintiff argues that because Maione and Ferentelli failed to address Mitey's conduct after several female staff members previously complained about alleged acts of sexual harassment and affirmatively retaliated against plaintiff, she has shown that Maione and Ferentelli fostered a culture and custom of discrimination as well as an environment in which discrimination was customary. However, plaintiff nowhere alleges that either Maione or Ferentelli were aware of the allegations of sexual harassment against Mitey by several other female school employees. Rather, the amended complaint pleads that she had informed her union representative about Mitey's conduct, was informed by that representative of the other allegations, but was told that the other employees had in fact been afraid to file formal complaints. (Am. Compl. ¶ 20.) Thus, as alleged in the complaint, there is no reason to believe that Maione and Ferentelli were aware of Mitey's allegedly harassing conduct until plaintiff herself informed them of it. There is also no allegation that Mitey continued his harassing conduct after plaintiff complained to Maione and Ferentelli or that Maione and Ferentelli failed to take steps to address plaintiff's complaints.

With respect to the alleged retaliation, as stated, retaliatory acts do not, on their own, make out an equal protection violation.  Accordingly, the Court finds that even under the standard articulated in <u>Colon</u> for supervisory liability, plaintiff has not adequately pled affirmative acts by Maione and Ferentelli sufficient to maintain a § 1983 equal protection claim against them.

IV. *Section 1985 Conspiracy Claims Against Mitey, Maione, and Ferentelli*

  Plaintiff asserts a claim pursuant to 42 U.S.C. § 1985, alleging that defendants Mitey, Maione, and Ferentelli conspired to violated plaintiff's constitutional rights.  To state a claim under 42 U.S.C. § 1985(3), a claimant must plead: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, and (3) an act in furtherance of the conspiracy (4) whereby a person is deprived of any right of a citizen of the United States.  <u>Brown v. City of Oneonta</u>, 221 F.3d 329, 341 (2d Cir.2000).  A plaintiff must aver some "class-based, invidious discriminatory animus behind the conspirators' action."  <u>Thomas v. Roach</u>, 165 F.3d 137, 146 (2d Cir. 1999).[4]  Broad allegations of conspiracy are insufficient; the plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve

---

[4] To the extent that defendants argue that gender discrimination does not classify as "class based animus" sufficient to state a claim under § 1985, that question would appear to be, at best, undecided in this Circuit.  <u>Bray v. Alexandria Women's Health Clinic</u>, 506 U.S. 263, 269 (1993), cited by defendants, ruled only that discrimination against "women seeking abortions" did not qualify as class-based animus, and declined to decide whether discrimination against women generally could meet the standard.  In <u>New York State Nat'l Org. for Women v. Terry</u>, the Second Circuit held that "women may constitute a class for purposes of § 1985(3)."  886 F.2d 1339, 1358-59 (2d Cir. 1989).  Four years later, in <u>Town of West Hartford v. Operation Rescue</u>, the Second Circuit declined to consider whether women qualified as a class under the statute.  991 F.2d 1039, 1046 (2d Cir. 1993) ("Respondents' contention . . . is that the alleged class-based discrimination is directed . . . at women in general. We find it unnecessary to decide whether that is a qualifying class under § 1985(3) . . . .").  Outside of this Circuit, courts have held that women are plainly covered, <u>see, e.g.</u>, <u>Lyes v. City of Riviera Beach, Fla.</u>, 166 F.3d 1332, 1338 (11th Cir. 1999) ("Any conclusion that women are not a protected class under § 1985(3) would run into a solid wall of contrary precedent."), and at least one court in this circuit has assumed that gender discrimination is class-based animus.  <u>See</u> <u>Greene v. Wright</u>, 389 F. Supp. 2d 416, 425-26 (D. Conn. 2005).  The Court need not decide that question, however, as the Court finds that plaintiff's claim should be dismissed for the reasons stated in the body of this decision.

the unlawful end." Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003) (internal quotation marks omitted); see also Arar v. Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009).

Here, plaintiff fails to allege facts adequate to infer a meeting of the minds. The only factual allegations connecting the individual defendants aside from their employment relationship are that Maione and Ferentelli attended a classroom observation of plaintiff together after plaintiff made her complaint against Mitey (Am. Compl. ¶ 25), that during that observation, Maione and Ferentelli whispered to each other (Am. Compl. ¶ 26), and that plaintiff attended a post-observation conference with Maione and Ferentelli during which Ferentelli informed her that there was inadequate student participation during her class and that the encounter would be written up as a formal observation. (Am. Compl. ¶ 27.) The complaint does allege that plaintiff was informed not to attend a school-wide dinner because Mitey would be in attendance, which plaintiff argues suggests that Mitey was in contact with Maione and Ferentelli; however, the amended complaint does not in fact allege that it was either Maione or Ferentelli who instructed plaintiff not to attend. (Am. Compl. ¶ 28.) Thus, there are not sufficient non-conclusory allegations to infer that Maione and Ferentelli were involved in a conspiracy to retaliate against plaintiff and no non-conclusory allegations at all that Mitey was somehow involved.

Even if plaintiff had adequately alleged facts sufficient to infer the existence of a conspiracy between Maione and Ferentelli, plaintiff's claim is barred by the intracorporate conspiracy doctrine.[5] "Under the intracorporate conspiracy doctrine, officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment, are legally incapable of conspiring together." Talley v. Brentwood Union Free School Dist., 728 F.Supp.2d 226 (E.D.N.Y. 2010) (citing Herrmann v. Moore, 576 F.2d 453, 459

---

[5] Mitey does not argue that he is protected by the intracorporate conspiracy doctrine.

(2d Cir. 1978)); <u>Rodriguez v. City of New York</u>, 2008 WL 420015, at *25 (E.D.N.Y. Feb.11, 2005) (dismissing conspiracy claim where all parties to conspiracy part of NYPD); <u>Everson v. New York City Transit Authority</u>, 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002) (explaining that a corporation or public entity "generally cannot conspire with its employees or agents as all are considered a single entity." (citations omitted)).  The individual defendants here are all employees of the same municipal entity, the Department of Education, and therefore the intracorporate conspiracy doctrine would apply.

Plaintiff argues, however, that the case fits into an exception to the intracorporate conspiracy doctrine.  Plaintiff argues first that the doctrine does not apply because Maione and Ferentelli may have been motivated, at least in part, by independent personal stakes in the matter at issue, outside of the interests of the corporation.  "'[A]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity.'"  <u>Quinn v. Nassau County Police Dept.</u>, 53 F. Supp. 2d 347, 360 (E.D.N.Y. 1999) (quoting <u>Bond v. Board of Education of the City of New York</u>, 1999 WL 151702, at *1 (E.D.N.Y.  March 17, 1999)).

The amended complaint nowhere alleges that defendants Maione and Ferentelli had some personal interest in firing plaintiff and protecting defendant Mitey.  In plaintiff's response brief, plaintiff speculates that Maione and Ferentelli may have had personal objectives in ingratiating themselves with Mitey, the union representative, who could potentially marshal union resources to advance their interests if need be.  To the extent plaintiff is arguing that by harnessing union resources, Mitey would assist Maione and Ferentelli's efforts to administer the school, the Court finds that such an interest is not personal, but aligned with the interests of the school.  Thus, such an interest is not "wholly separate and apart from the entity" in question.  <u>Quinn</u>, 53 F. Supp. 2d

at 360.  At oral argument, plaintiff's counsel speculated that Maione and Ferentelli could have had a separate personal interest in ingratiating themselves to the union because, on a future occasion, Maione and Ferentelli might be in a position where they required personal union representation.  However, it is nowhere alleged in the complaint that Maione and Ferentelli are members of the UTF, and as plaintiff's counsel conceded, as school administrators, Maione and Ferentelli are in fact represented by a different union.

Plaintiff next argues that the intracorporate conspiracy doctrine does not apply in light of the series of discriminatory and retaliatory acts alleged.  The intracorporate conspiracy doctrine is applied where the "conspiratorial conduct challenged is essentially a single act by a single corporation acting exclusively through its own directors, officers, and employees, each acting within the scope of his employment.'"  Geiger v. E.I. DuPont Nemours & Co., Inc., 1997 WL 83291, at *10 (S.D.N.Y. February 27, 1997) (quoting Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978)).  In Yeadon v. New York City Transit Authority, the court held that where "plaintiffs have adequately alleged a series of separate discriminatory acts by the corporate entity and its agents," the intracorporate conspiracy doctrine may be inapplicable.  719 F. Supp. 204, 212 (S.D.N.Y. 1989); see also Wahad v. Federal Bureau of Investigation, 813 F. Supp. 224, 232 (S.D.N.Y. 1993) ("The defense that a single corporation and its employees cannot conspire under § 1985 is not always accepted where continuing, separate instances of discrimination are alleged . . . .").

In Yeadon, however, the Court relied on two heavily criticized opinions, Rackin v. University of Pennsylvania, 386 F.Supp. 992 (E.D.Pa.1974), and Stathos v. Bowden, 728 F.2d 15 (1st Cir.1984).  As Judge Easterbrook has argued, that line of cases "responds neither to the text nor to the objectives of § 1985. Section 1985 depends on multiple actors, not on multiple

acts of discrimination or retaliation. Sequences such as first chastising an employee and then firing him are neither better nor worse (so far as the objectives of § 1985 are concerned) than is a clean act of discharge." Travis v. Gary Community Mental Health Ctr., Inc., 921 F.2d 108, 111 (7th Cir.1990). Thus, in Johnson v. Nyack Hosp., 954 F. Supp. 717 (S.D.N.Y. 1997), a decision subsequent to Yeadon and Wahad, the court declined to hold that a series of discriminatory acts makes the intracorporate conspiracy doctrine inapplicable. Id. at 724.

Moreover, cases in this circuit holding that a series of actions by the defendants in question may make the intracorporate conspiracy doctrine inapplicable are distinguishable due to the timing and scope of the discriminatory acts in question. In Wahad, for example, the plaintiff alleged a series of discriminatory acts performed by governmental agencies over the course of at least 19 years. 813 F. Supp. at 226. Likewise, in Yeadon, the intracorporate conspiracy doctrine was overcome where the plaintiffs alleged that officers, among other acts, "routinely accused innocent, disproportionately black and Hispanic subway riders of petty but humiliating crimes, made racist remarks while arresting them, and initiated prosecutions against them." 719 F. Supp. at 207. Thus, in cases in this circuit where courts found exception to the intracorporate conspiracy doctrine based on a series of actions, the acts alleged were widespread or occurred over a prolonged period, thus making them "distinct and individual acts of discrimination." Wahad, 813 F. Supp. at 232.

Here, in contrast, the acts alleged in the amended complaint all arise out of an isolated employment relationship between plaintiff and the school and the alleged acts of the individual defendants culminating in plaintiff's termination. Maione and Ferentelli's acts, allegedly in retaliation for plaintiff's complaint of harassment by Mitey, occurred over a period of months. Although plaintiff makes numerous factual allegations, the only retaliatory acts allegedly

performed by Maione and Ferentelli were plaintiff's termination and other acts that potentially

provided them with cause for her termination. The acts alleged, therefore, were not distinct or

individual acts, but rather isolated to a single employment relationship and its termination. These

acts occurred pursuant to Maione and Ferentelli's responsibilities as administrators of FDR.

Accordingly, the Court finds that the intracorporate conspiracy doctrine applies to any alleged

conspiracy between Maione and Ferentelli. For the reasons stated, any cause of action for

conspiracy in violation of 42 U.S.C. § 1985(3) is dismissed.

V.      *State and City Law Claims*

Plaintiff alleges various State and City law causes of action against each of the named

defendants. The City Defendants argue that any State and City law claims against the

Department of Education, Maione, or Ferentelli are barred by the applicable statute of

limitations. Mitey argues that the Court should dismiss the State and City law claims as time-

barred, or, in the alternative, decline to exercise supplemental jurisdiction over such claims.

a. *State and City Law Claims Against the Department of Education*

The Department of Education correctly argues that any State or City law claim brought

against it is barred by the applicable statute of limitations. New York Education Law § 3813(2-

b) provides that the limitations on a claim brought against individuals or entities referenced in

§ 3813(1), which includes school districts and boards of education, is one year. See Amorosi v.

South Colonie Ind. Cent. School Dist., 9 N.Y. 3d 367, 373 (2007); see also Moore v. City of

New York, 2010 WL 742981, at *9-*11 (S.D.N.Y. Mar. 2, 2010). Thus, plaintiff's action

against the Department of Education must have been brought within the applicable one-year

statute of limitations. Lewinter v. New York City Dept. of Educ., 2010 WL 2746334, at *2

(S.D.N.Y. July 9, 2010) ("New York law requires that a plaintiff plead and prove compliance

with Education Law § 3813's . . . statute of limitations requirements in any action against the DOE or its officers."); <u>Falchenberg v. New York City Dep't of Educ.</u>, 375 F. Supp. 2d 344, 347 (S.D.N.Y. 2005) (finding discrimination suit brought against Department of Education subject to notice of claim provisions of § 3813).  Plaintiff's termination from the Department of Education occurred on or about June 2, 2008.  (<u>See</u> Am. Compl. ¶ 32.)  Plaintiff, however, did not file this action until September 17, 2009.  <u>See</u> § 3813(2-b) ("[N]o action . . . shall be commenced . . . more than one year after the cause of action arose[.]").  Accordingly, plaintiff exceeded the limitations period for any State or City law claim against the Department of Education.

Plaintiff does not argue that she has filed this action within the applicable limitations period relevant to the Department of Education.  Instead, plaintiff argues that the statute of limitations defense was waived.  Federal Rule of Civil Procedure 8(c) requires that affirmative defenses be asserted in responsive pleadings.  However, in light of Rule 15(a)'s authorization of the amendment of answers "as justice so requires," even where an affirmative defense is not raised in response to the original complaint, generally, the defense is not waived where the party timely raises the defense in response to an amended complaint.  <u>See</u> <u>Legal Aid Society v. City of New York</u>, 114 F. Supp. 2d 204, 222 (S.D.N.Y. 20000); <u>see also</u> <u>Massey v. Helman</u>, 196 F.3d 727, 735 (7th Cir. 1999) ("Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses."); <u>Plon Realty Corp. v. Travelers Ins. Co.</u>, 533 F. Supp. 2d 391, 394 (S.D.N.Y. 2008) (finding contractual statute of limitations defense not waived where timely raised in response to amended complaint).

Plaintiff cites case law in the context of Rule 12(b) to the effect that if a defense is not raised in a responsive pleading or by motion, under that rule, it is waived even where a plaintiff

26

subsequently files an amended complaint. However, the context of Rule 12 is distinct from that of Rule 8, as Rule 12 contains an explicit waiver provision, whereas no such provision is included in Rule 8. See, e.g., Pruco Life Ins. Co. v. Wilmington Trust Co., 616 F. Supp. 2d 210, 215 (D.R.I. 2009) (distinguishing waiver analysis under Rule 8 and Rule 12). Moreover, there is no assertion that defendants' failure to raise the defense in response to the initial pleading has in anyway prejudiced the plaintiff. Accordingly, the Court holds that the Department of Education has not waived its statute of limitations defense, and the State and City law causes of action against it are dismissed.

   *b. State and City Law Claims Against Maione and Ferentelli*

   Maione and Ferentelli also move to dismiss plaintiff's State and City law claims against them, arguing that as employees of the Department of Education, such claims are also subject to the one-year statute of limitations provided by Education Law § 3813(2-b). Although plaintiff does not make the argument, however, Maione and Ferentelli are not covered by § 3813(2-b). Section 3813(2-b) does not apply to all "employees" of a school district. As already stated, it is applied only to claims against individuals or entities referenced in § 3813(1). Those individuals include "officer[s] of a school district, board of education . . . or school provided for in article eighty-five of this chapter or chapter ten hundred sixty of the laws of nineteen hundred seventy-four." However, Maione and Ferentelli are not "officers" of the school district or the board of education. Moore, 2010 WL 742981, at *10 (holding principal and assistant principal are not "officers" within the meaning of § 3813(1) (citing Baroor v. New York City Dep't of Educ., 2009 WL 959537 (E.D.N.Y. Apr.3, 2009))); see also Carlson v. Geneva City School Dist., 679 F. Supp. 2d 355, 367-68 (W.D.N.Y. 2010) ("[S]chool principals are not entities covered by § 3813(1), and the one-year limitations period does not apply to them"); Richards v. Calvet, 2005

WL 743251, at \*13 (S.D.N.Y. Mar. 31, 2005) (holding that § 3813(1) does not apply to claims against school principals because principals are not "officers" within the meaning of the statute); Williams v. City of New York, 2006 WL 2668211, at \*25 (E.D.N.Y. Sept. 11, 2006) ("[T]he statute of limitations established by § 3813 does not . . . require the dismissal of plaintiff's claims against defendant [principal] as he is not a school, district, board of education . . . or any officer thereof.").[6] Defendants do not assert that they are employees of a school provided for in Article 85 or Chapter 1060, nor is there any reason to believe that is the case. "Article 85 schools are statutorily designated 'special schools,' including schools for the instruction of the deaf and blind, as are schools governed by Chapter 1060 under the 1974 laws." Richards, 2005 WL 743251, at \*13.

As such, the individual defendants are subject to the three year statute of limitations otherwise applicable to State and City law claims of discrimination. Moore, 2010 WL 742981, at \*10 (citing C.P.L.R. § 214(2)). As the sole ground on which Maione and Ferentelli move to dismiss plaintiff's State and City law claims against them is the expiration of the statute of limitations under Education Law 3813(2-b), the Court will not dismiss such claims at this time.

    *c.*    *State and City Law Claims Against Mitey*

Mitey moves to dismiss plaintiff's State and City law claims, arguing that the Court should dismiss such claims as untimely or in the alternative that the Court should decline to exercise supplemental jurisdiction over such claims.

    *i.*    *Statute of Limitations Relevant to Mitey*

Mitey argues that plaintiff's State and City law claims are untimely, citing Education

---

[6] In fact, Education Law § 3813(2) specifically distinguishes between those parties referred to in § 3813(1) and "any teacher or member of the supervisory or administrative staff or employee."

Law § 3813.  However, like Maione and Ferentelli, and for the reasons stated above, Mitey is not

an "officer" of the school district or board of education or of a "special school" identified in

Article 85 or Chapter 1060.  See also Carlson, 679 F. Supp. 2d at 367 (explaining "teachers, and

other school employees are not included within the scope of § 3813(1)").  Accordingly, the Court

finds that plaintiff's State and City law claims against Mitey are subject instead to a three year

statute of limitations, and denies Mitey's motion to dismiss the State and City law claims on this

ground.  Moore, 2010 WL 742981, at *10 (citing C.P.L.R. § 214(2)).

ii.     *Supplemental Jurisdiction*

Mitey argues that the Court should decline to exercise supplemental jurisdiction over

plaintiff's State and City law claims against him.  Under 28 U.S.C.1367(a), the Court may

exercise supplemental jurisdiction "over all other claims that are so related to claims in the action

within [the Court's] original jurisdiction that they form part of the same case or controversy

under Article III of the United States Constitution."  See also United Mine Workers v. Gibbs,

383 U.S. 715, 725 (1966).  Supplemental jurisdiction extends not only to additional claims, but

to additional parties.  28 U.S.C. 1367(a); Exxon Mobil Corp. v. Allapattah Services, Inc., 545

U.S. 546, 556 (2005).  Nevertheless, Mitey argues that because the Court has dismissed all

federal causes of action against him, the Court should decline to exercise supplemental

jurisdiction as a matter of discretion under 28 U.S.C. 1367(c).  "In the usual case in which all

federal-law claims are eliminated before trial, the balance of factors to be considered under the

[supplemental] jurisdiction doctrine-judicial economy, convenience, fairness, and comity-will

point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie–

Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7 (1998).  Here, however, the Court has not

dismissed all of the federal causes of action arising from the facts and circumstances surrounding

Mitey's conduct. There is substantial overlap between plaintiff's remaining federal causes of action asserted against the Department of Education, Maione, and Ferentelli, her State and City law causes of action against Maione and Ferentelli, and her State and City law claims against Mitey. Accordingly, in the interest of judicial economy, the Court will at this time retain jurisdiction over plaintiff's State and City law claims against Mitey.

CONCLUSION

For the reasons stated, the following claims are dismissed: (1) all claims against the City of New York; (2) all federal claims against Mitey; (3) any § 1983 claim against Maione and Ferentelli arising out of the Equal Protection clause; (4) any § 1985 conspiracy claim against Mitey, Maione, and Ferentelli; and (5) plaintiff's State and City law claims against the Department of Education. Plaintiff retains the following claims: (1) Title IX claims against the Department of Education; (2) a § 1983 claim against Maione and Ferentelli for First Amendment retaliation; and (3) State and City law claims against Mitey, Maione, and Ferentelli.

SO ORDERED.

Dated:     Brooklyn, New York
           September 30, 2011

                                    _____/s/_____
                                    Carol Bagley Amon
                                    Chief United States District Judge